LORI M. KAISER, Plaintiff-Appellee,
v.
JOSEPH A. KAISER, Defendant-Appellant.
No. 27879
Intermediate Court of Appeals of Hawaii.
April 4, 2007.
On the briefs:
Scott T. Strack, for Defendant-Appellant.
Timothy Luria, (Stirling & Kleintop), for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
BURNS, C.J., NAKAMURA and FUJISE, JJ.
Defendant-Appellant Joseph A. Kaiser (Joseph) appeals from the March 13, 2006 Order and Judgment Regarding Defendant's Motion to Compel Payment of Monies Owed to Defendant and For Other Relief Filed on December 22, 2005 (March 13, 2006 Judgment) entered in the Family Court of the First Circuit.[1]
Joseph and Plaintiff-Appellee Lori M. Kaiser, nka Lori M. Hiraoka (Lori), were married on March 24, 1990. Their son was born on March 15, 1991. Joseph was a "chief legalman" or "paralegal, legal secretary" with the United States Navy.
On January 2, 2001, Lori filed a Complaint for Divorce. The Divorce Decree entered on March 5, 2001 stated in part:
If at any time after he retires, [Joseph] voluntarily causes a reduction in his gross retired or retainer pay, and thereby deprives [Lori] of a part or all of her benefits conferred by this Section, [Joseph] shall be deemed to have created a constructive trust for [Lori's] benefit under federal and all applicable state law, and [Lori] shall thereupon have an interest in, and the right of immediate possession of, so much of [Joseph's] property awarded hereby as is necessary to satisfy said trust. The Family Court shall have continuing jurisdiction to enforce the trust, and make all orders necessary to implement the trust.
Joseph was stationed in Crete from December 2002 to December 2004. Joseph permanently moved to Crete in February 2005. On or about March 31, 2005, Joseph retired from the United States Navy. On April 15, 2005, a Stipulation for Clarification Order Specifying the Number of Months that the Parties were Married for Purposes of Award of Military Retirement was "Approved and So Ordered" by Judge R. Mark Browning. The following is the relevant arithmetic:

 $3,247.65 monthly gross
 × 51.05% 20.42 years × .025
 __________
 $1,657.00 monthly marital gross
- $ 107.79 monthly premium for SBP (Survivor's
 __________ Benefit Plan) which Lori reimburses
 to Joseph
 $1,549.21 monthly adjusted marital gross
 × 26.73% 131 months 245 months × .50
 __________
 $ 414.10 amount of Lori's monthly share

Effective August 1, 2005, Joseph elected to receive $783 per month of his monthly gross retirement pay as disability pay. On December 22, 2005, Joseph filed Defendant's Motion to Compel Payment of Monies Owed to Defendant and for Other Relief.
A hearing was held on February 16, 2006. Joseph attended by telephone. At that hearing, counsel for Lori pointed out that the documents from experts offered by Joseph about his "depression" "say nothing about whether he's capable of working." Joseph admitted that the Veteran's Administration had determined that he did not have service-connected carpal tunnel syndrome.
After the February 16, 2006 hearing, the Court entered the March 13, 2006 Judgment which stated in part:
1.. . . [T]he Court finds as follows:
. . . .
c) Pursuant to the formula . . . [Lori's] percentage share of [Joseph's] disposable military retired/retainer pay is twenty six and 73/100 percent (26.73%), calculated as follows:
.5 x [131/245] = 26.73%
. . . .
3.CHILD SUPPORT. The Court finds that [Joseph] is capable of earning three thousand six hundred twenty one dollars ($3,621.00) in gross monthly income and imputes that amount to him. . . . Accordingly, . . . commencing January 1, 2006, [Joseph] shall pay to [Lori] three hundred seventy dollars ($370.00) per month as and for child support[.]
On April 11, 2006, Joseph filed a notice of appeal. May 23, 2006, the Court entered the Findings of Fact and Conclusions of Law (FsOF and CsOL). The following are some of the FsOF:
18. Subsequent to his retirement from the U.S. Navy on or about March 31, 2005, [Joseph] voluntarily made an election which had the following consequences: (i) it caused a reduction of $783.00 per month to [Joseph's] gross military retired [sic] or retainer pay; (ii) it caused [Joseph] to receive that same amount, $783.00 per month, as disability pay ("VA Waiver"); and (iii) it deprived [Lori] of a portion of the share of [Joseph's] military retired [sic] or retainer pay awarded to her by the Divorce Decree and Clarification Order. . . .
. . . .
21. As set forth in section 13 on page 14 of the Divorce Decree, [Lori] is to bear the entire premium paid for the SBP by annually reimbursing to [Joseph] an amount . . . .
. . . .
27. [Joseph] worked as a paralegal when he was on active duty with the U.S. Navy . . . .
28. While on active duty, [Joseph] was stationed in Greece on the island of Crete from approximately December of 2002 to December of 2004. . . .
29. [Joseph] voluntarily chose to reside on Crete after his retirement from the U.S. Navy.
. . . .
31. [Joseph] has remarried, and his wife resides on Crete.
32. [Joseph's] date of birth is July 11, 1964. His age is 41 years.
The following two CsOL, are FsOF:
13. Taking into consideration [Joseph's] age, employment history, and all other credible documentary evidence and testimony adduced at trial, the Court concludes that [Joseph] is capable of earning no less than the same amount of gross monthly income that he was earning at or about the date of divorce, namely, three thousand six hundred twenty one dollars ($3,621.00), if he were to attempt in good faith to secure proper employment, and the Court imputes that amount of income to him. Cleveland v. Cleveland, 1 Haw. App. 187, 616 P.2d 1014 (1980).
. . . .
16. The Court concludes that [Joseph's] assertion that he has medical conditions other than sleep apnea and that such medical conditions limit his ability to work are unsupported by credible and relevant documentary evidence and testimony adduced at trial.
As noted by counsel for Lori, the Court actually decided that Joseph is capable of receiving his $1,713 retirement plus earning $1,908 for a total of $3,621.00 in gross monthly income, the same amount that he was receiving from the Navy at the time of the divorce.
Counsel for Joseph contends that the Court ordered "that [Joseph] shall pay to [Lori] 26.73%, of his combined military retired/retainer pay and disability benefits."
Without any specifics, counsel for Joseph informs in the reply brief that
[i]n October and November of 2006, after the filing of this appeal The [sic] Veterans Administration and U.S. Military took various actions to amend the division of [Joseph's] entitlements between non-taxable, non-divisible disability pay and taxable, divisible retired/retainer pay.
Joseph asserts two points on appeal. First, he contends that the family court erred in deciding that Perez v. Perez, 107 Hawai`i 85, 110 P.3d 409 (App. 2005) should be followed in this matter and that notwithstanding his reduction in disposable retired/retainer pay due to disability, Lori should continue to receive money equal to the percentage amount she would have received if he had not been found disabled. Joseph argues:
Under Perez, supra and similar cases where the inequity arises, and thereby individuals such as [Joseph] are denied equal protection under the U.S. and Hawaii constitutions, is that should the disability payment occur pre-divorce then the disability remains untouched and there is no legal gymnastics to get the former spouse more money. See e.g.; Jones v. Jones, 7 Haw[.] App. 496, 780 P.2d 581 (App. 1989). In cases such as the instant case because the divorce took place before [Joseph] could obtain his disability rating he is punished and his disability benefits subject to attack.
The reply brief states:
[T]he reality is that individuals such as Jones who retire first and then divorce cannot be bullied into having their disability encroached upon. Whereas, individuals such as [Joseph] and Perez can be bullied into having their disability encroached upon because they have not yet been able to establish that disability.
An additional problem with Perez is that it assumes that individuals have free choice to just suddenly declare "I want to be disabled". This is not the case, here or in any other case. The individual may apply, upon retirement, to be evaluated for a disability rating by the Veterans Administration. There are various reasons to seek such a rating, i.e. tax free income, better consideration for certain federal employment, etc. The concept that this is done solely to "cheat" an ex-spouse of money is simply not correct.
Second, Joseph contends that (a) the court decided that notwithstanding him having been found to be disabled, his earning capacity remained at a level equal to what he was paid while on active duty with the military, and (b) the court erred in so deciding. In arguing this second point, Joseph asserted the following additional points without identifying them as such.
The Family Court made the finding of fact that [Joseph] had an earning capacity on February 1, 2001, of $3,621.00. The Court then went on to make conclusions of law that [Joseph] had the same earning capacity on February 16, 2006. Specifically the court noted in COL 16 "The Court concludes that [Joseph's] assertion that he has medical conditions other than sleep apnea and that such medical conditions limit his ability to work are unsupported by credible and relevant documentary evidence and testimony adduced at trial."
This conclusion is extremely disturbing given current Family Court rules and practices. Currently the calendar upon which [Joseph's] motion [was heard] specifically does not allow for witnesses to be brought, even as foundational ones to admit documents. Moreover in this case [Joseph] would have had to transport medical professionals from Crete to Hawaii just to verify their letters submitted an [sic] proposed exhibits. The Court's refusal to consider these exhibits denied [Joseph] a full and fair hearing. Coupling this with the Court's refusal to accept [Joseph's] uncontroverted testimony about his medical limitations place him in an impossible position when it came to proving his current work abilities. Moreover the court refers to other documentary evidence, of which there is none[,] in concluding his earning capacity is not diminished.
Additionally, the Court had no evidence whatsoever before it upon which to base its conclusion that [Joseph] could find employment in Crete at an amount equal to what he was earning five years before. There is no basis for this finding, rather all the evidence before the court shows he is in fact making significantly less and cannot find current employment. To imply that [Joseph] is somehow at fault for choosing to live in Crete with his current wife impinges upon his right to travel as guaranteed by the U.S. Constitution.
In accordance with Hawaii Rules of Appellate Procedure Rule 35, and after carefully reviewing the record and the briefs, and duly considering and applying the law relevant to the issues raised and arguments presented, we affirm the March 13, 2006 Order and Judgment Regarding Defendant's Motion to Compel Payment of Monies Owed to Defendant and For Other Relief Filed on December 22, 2005 entered in the Family Court of the First Circuit.
NOTES
[1] Judge Christine E. Kuriyama presided.